Weldon, J.,
delivered the opinion of the court:
This claim is founded upon a contract for mail-messenger service in the city of St. Louis, as shown by the contract bearing date on the 10th day of March, 1883, as set forth in finding I.
The facts show that as early as August, 1883, the Department became dissatisfied with the mode in which the plaintiff was performing the service; that after some correspondence, on the 8th day of October, 1883, the contract was suspended by the Department and temporary service awarded to the “ St. Louis Transfer Company,” which performed the service until the 29th of February, 1884, when the plaintiff was restored to duty, and continued to perform it until the end of the term.
In the adjustment and payments of his accounts the defendants credited the plaintiff with the full compensation due him under his agreement, and deducted therefrom the amount paid the said company for the performance of the service at the rate of $26,973.60 per annum. The result of that mode of computation was, that the claimant had deducted from his aggregate compensation the sum of $10,676.47.
This suit is brought to recover that sum, and involves the necessity primarily upon the part of the plaintiff to show that he performed his contract in all its substantial requirements, and that the Postmaster-General, in ordering the suspension, acted in bad faith. Upon the subject of fines imposed by this Postmaster-General the court said:
“The statute makes the Postmaster-General the judge when a fine shall be imposed, and unless that power is exercised incompatibly with the reasonable and legitimate use of the power, parties contracting with the Government are bound by his action. The service to be performed is of such a character that a provision of that kind is essential to the successful performance of the most important function incident to the executive branch of the Government. If the Post-Office Department were subjected to the ordinary remedy for a violated contract, the measure of protection would be incommensurate to the wrong inflicted, and the mail service might thereby be impaired in that efficiency required by public policy. * * *
“The law having selected the Postmaster-General as the arbiter between the Government and contractor to determine the question of delinquency, his action in the premises, if objected to, must be impeached by showing such a state of facts as constitute in law a failure on the part of the officer to discharge the duty imposed on him iu substantial requirement with his *467 legal duty in the premises.” (Otis v. United States, 24 C. Cls. R., 72.)
The plaintiff was not only dissatisfied with the suspension, insisting that he had done all the obligations of the contract required, but from the time of suspension until the restoration of the service to him he was seeking to resume the performance of the contract.
It is not necessary that we should pass upon the right of the Postmaster-General to suspend the execution of the contract upon the part of the plaintiff under all the facts and circumstances of this case, for the reason that the fifth finding settles, in the opinion of the court, all questions in controversy.
When the claimant was suspended in the.exercise of an assumed power upon the part of the Department he had his remedy, if the power had been improperly and unlawfully exercised.
Whatever difference existed between the parties was settled and adjusted in the arrangement under which the claimant resumed the work, and by the terms of that arrangement or settlement the claimant agreed to pay what the defendants had paid the St. Louis ‘Transfer Company, which was the amount deducted from the pay of claimant and for which he has brought this suit. The judgment of the court is that the petition be dismissed.